UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| J.K.A and T.B.F, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 23-cv-02273 (APM) |
| UNITED STATES OF AMERICA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

|  |  |  |
|---|---|---|
| K.N.N., *et al.*, | ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 23-cv-02748 (APM) |
| UNITED STATES OF AMERICA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

These matters are brought by Cameroonian refugees who unsuccessfully sought asylum in the United States and concern their treatment by certain federal agencies and their employees. In both cases, Plaintiffs allege that federal agents improperly secured them in a full-body restraint device called the "WRAP" for hours before and during their deportation flights. In *J.K.A.*, Plaintiffs additionally assert retaliatory acts in response to their participation in a hunger strike, including placement in solitary confinement, physical abuse, and denial of medical treatment.

Plaintiffs in both cases also generally allege mistreatment at various detention facilities across the United States.

Defendants seek to transfer *K.N.N.* to the Northern District of Texas and *J.K.A.* to the Western District of Louisiana, or otherwise to dismiss on various grounds. For the reasons that follow, the court grants Defendants' motions to transfer. The court denies without prejudice Defendants' motions to dismiss, with leave to renew in the transferee courts.[1]

## II.     LEGAL STANDARD

Section 1404(a) of Title 28 authorizes transfer of a civil action to any other district where it could have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).[2] Transfer may be appropriate "[e]ven where a plaintiff has brought its case in a proper venue." *Preservation Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 53 (D.D.C. 2012). A case should not be transferred, however, "simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000) (internal quotation marks omitted). District courts have "discretion . . . to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Under Section 1404(a), it is the movant's burden to establish the propriety of transfer. *See Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). This burden encompasses two distinct steps. First, the movant must establish that the plaintiff could have brought the action in the proposed transferee district. *See Van Dusen*, 376 U.S. at 622. Second,

---

[1] The court apologizes to the parties for the length of time it has taken to resolve these motions.
[2] The court evaluates transfer under Section 1404(a) and therefore does not decide whether Section 1406 might apply. *See, e.g.*, *Claros v. Cowan*, No. 21-cv-609 (JEB), 2021 WL 1820209, at *1 (D.D.C. May 6, 2021); *Bradley v. Cardona*, No. 22-cv-3316 (CRC), 2023 WL 8469669, at *2 n.2 (D.D.C. Dec. 7, 2023) (following *Claros*).

the movant must show that "considerations of convenience and the interest of justice weigh in favor of transfer" to the transferee court. *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 31 (D.D.C. 2004). The latter inquiry "calls on the district court to weigh in the balance a number of case-specific factors," which reflect the public and private interests at stake. *Stewart Org.*, 487 U.S. at 29. Not all are statutory; rather, the factors "are intended to elucidate the concerns implied by the phrase 'in the interest of justice.'" *Stand Up for California! v. U.S. Dep't of Interior*, 919 F. Supp. 2d 51, 64 (D.D.C. 2013) (citing *Stewart Org.*, 487 U.S. at 29).

The private-interest factors courts typically consider include: "(1) the plaintiff's choice of forum . . . ; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses . . . ; and (6) the ease of access to sources of proof." *Trout Unlimited*, 944 F. Supp. at 16. The public-interest factors include: "(1) the transferee [court's] familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Id.*

### III.   DISCUSSION

The court presumes the parties' familiarity with the relevant allegations and therefore foregoes a fulsome recitation. The court references the complaints only as needed to evaluate the requests for transfer.

As noted, a movant must first establish that the plaintiff could have brought the action in the proposed transferee district. *See Van Dusen*, 376 U.S. at 622. Plaintiffs do not dispute that their cases could have been brought in the venues proposed by Defendants. K.N.N. Defs.' Mem. of P&A in Supp. of Defs.' Mot. to Transfer and Dismiss, ECF No. 16-1 [hereinafter "K.N.N. Mot."], at 13–14 (proposing transfer to the Northern District of Texas); J.K.A. Defs.' Mem. of

3

P&A in Supp. of Defs.' Mot. to Transfer or, in the Alternative, Dismiss, ECF No. 31-1 [hereinafter "J.K.A. Mot."], at 13–14 (proposing transfer to the Western District of Louisiana); K.N.N. Pls.' Response in Opp'n to K.N.N. Mot., ECF No. 22 [hereinafter "K.N.N. Opp'n"], at 7–20; J.K.A. Pls.' Response in Opp'n to J.K.A. Mot., ECF No. 37 [hereinafter "J.K.A. Opp'n"] at 8–21.[3] The court therefore treats this point as conceded and moves to balancing the relevant factors.[4]

### A. Private-Interest Factors

#### 1. Parties' Choice of Forum

The first private-interest factor is the plaintiff's choice of forum, which is generally afforded "substantial deference." *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001). But that deference is not unyielding. The amount owed is diminished "where the plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Trout Unlimited*, 944 F. Supp. at 17 (internal quotation marks omitted); *see also Wilderness Soc'y*, 104 F. Supp. 2d at 13 ("The degree of deference accorded to [a plaintiff's] choice of forum therefore depends upon the nexus between [a plaintiff's] chosen forum ... and the dispute over the [action at issue]."). It is also reduced where a plaintiff is not a resident of their chosen forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 236 (1981) ("When the plaintiff has chosen the home forum, it is reasonable to assume that the choice is convenient; but when the plaintiff or real parties in interest are foreign, this assumption is much less reasonable and the plaintiff's choice deserves less deference."). In these cases, Plaintiffs' choice of forum is

---

[3] Where the court cites *K.N.N.*-related filings, the court refers to case number 23-cv-02748 (APM) in this District. *J.K.A.* citations refer to the docket found at 23-cv-02273 (APM).

[4] The parties contest whether Plaintiffs can establish venue in the District of Columbia under the FCA's venue provision, 28 U.S.C. § 1402(b), which permits venue "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." *See* K.N.N. Mot. at 20–24; K.N.N. Opp'n at 9–13; J.K.A. Mot. at 20–25; J.K.A. Opp'n at 11–14. Because the court transfers these cases under § 1404(a), it declines to reach the merits of this dispute.

entitled to some but not "substantial deference" as no individual Plaintiff is a resident here. All live abroad. Moreover, the District of Columbia's connection to the dispute, even under Plaintiffs' telling is, at least, one step removed from the central aspects of the case, all of which occurred in other districts. More on this below.

The second factor—the defendants' choice of forum—"must be accorded some weight" when the movant presents legitimate reasons for preferring to litigate the case in the transferee district. *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 48 (D.D.C. 2006). Defendants have done so here. *See infra* Section III.A.2.

### 2. *Where the Claims Arose*

The third factor—where the claims arose—is at the core of the parties' dispute and is, arguably, the most important factor. *See Bourdon v. U.S. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017) (stating that where the claims arose is of "predominant importance"). In both cases, Plaintiffs allege unlawful use of restraints and physical force, infliction of emotional distress, and denial of necessary medical treatment. K.N.N. Compl., ECF No. 1; J.K.A. Compl. ECF No. 1. None of these alleged acts occurred in the District of Columbia.

For instance, the claimed unlawful use of the WRAP occurred in Texas during Plaintiffs' deportations. K.N.N. Compl. ¶¶ 106, 107, 116, 125–26 (Plaintiff C.M.), ¶¶ 133–35 (Plaintiff E.U.); J.K.A. Compl. ¶ 86 (alleging that Plaintiffs remained shackled on a deportation flight that left from Fort Worth Airport). Similarly, the use of physical force and denial of medical treatment took place in the various facilities where Plaintiffs were detained, all of which are in Southern states. K.N.N. Compl. ¶ 34 (alleging that the *K.N.N.* plaintiffs were detained at "various immigration detention facilities in Alabama, Florida, Louisiana, Mississippi, and Texas" where they were subject to the "unlawful use of physical force and restraints"); J.K.A. Compl. ¶¶ 24–25

5

(alleging that *J.K.A.* Plaintiffs were detained in facilities in Louisiana and Texas and ultimately deported from Fort Worth).

Plaintiffs attempt to secure a footing in this District by claiming that D.C.-based DHS and ICE officials were involved in the approval, planning, and coordination of the deportation flights. K.N.N. Opp'n at 23–24; J.K.A. Opp'n at 3–5. But it is settled that the "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative," *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25–26 (D.D.C. 2002); instead, there must be a "real connection between the District of Columbia and [the] litigation" that goes beyond the presence of federal agency officials who are "generally regulating and overseeing the [administrative] process," *id.* at 26 (alteration in original) (citation omitted).

Here, there is none. Plaintiffs do not even allege that officials in this District directed the improper use of the WRAP or the mistreatment at the various detention facilities. The fact that some D.C.-based officials planned and coordinated the deportation flights "cannot transform a case that plainly arose [elsewhere] to one that arose in the District." *Muldrow v. Garland*, No. 20-cv-2958 (APM), 2021 WL 6844248, at *2 (D.D.C. Oct. 26, 2021).

       3.     *Convenience Factors*

Each of the remaining private-interest factors—the convenience of the parties, the convenience of the witnesses, and ease of access to proof—are either neutral or favor Defendants' proposed forums.

This forum is not more convenient for either side. Plaintiffs are no longer in the United States, and all but one of their counsel of record lists a business address outside the District. Federal defendants, of course, can litigate in any venue. Plaintiffs cite *Rossville Convenience & Gas, Inc. v. Barr* for the proposition that this factor is neutral. 453 F. Supp. 3d 380, 388 (D.D.C.

2020); K.N.N. Opp'n at 16; J.K.A. Opp'n at 17. But unlike *Rossville Convenience*, where "some of the material acts that [were] a part of the factual predicate for the claims took place in this District," Plaintiffs here identify only limited connections. *See* 453 F. Supp. 3d at 388.

Most of the relevant witnesses also will be found outside of the District. As discussed, Plaintiffs' claims arose in various other states, where the core unlawful conduct occurred. Witnesses to the events presumably can be found there. To the extent that any D.C.-based witness has something to say about these cases, their testimony is likely to be, at most, ancillary to the main facts in dispute. *See Muldrow*, 2021 WL 6844248, at *2 ("[T]he court is unconvinced that many relevant witnesses will be found here, and even if some will be, the more substantial witnesses are in" other Districts.). Plaintiffs' FOIA requests underscore the point. They show D.C.-based witnesses involved only in scheduling deportation flights and receiving notice about a hunger strike. K.N.N. Pls.' Sur-Reply in Opp'n to K.N.N. Mot., ECF No. 30-1 [hereinafter K.N.N. Sur-Reply], at 1–3; J.K.A. Pls.' Sur-Reply in Opp'n to J.K.A. Mot., ECF No. 45-1 [hereinafter J.K.A. Sur-Reply], at 1–3.

The ease of access to documents likewise favors litigation in another venue. Searches will need to be conducted at the relevant ICE facilities and the locations from which the deportations took place. Conversely, as the FOIA records show, records involving this District are likely to be less relevant to the key issues.

On balance then, the private-interest factors weigh heavily in favor of transfer.

### B.   Public Interest Factors

Turning then to the public-interest factors, they too fall on the side of transfer.

#### 1.   *The Transferee Court's Familiarity with The Governing Law*

In both cases, there are a mix of claims that involve federal and state laws. In *K.N.N.*, Plaintiffs assert six tort claims under Texas law, three tort claims under District of Columbia law, and federal claims. K.N.N. Opp'n at 19. Similarly, *J.K.A.* involves six tort claims under Louisiana law, three tort claims under District of Columbia law, and federal claims. J.K.A. Opp'n at 21.

As to the federal causes of action, because this district court and the proposed transferee "courts are competent to interpret the federal statutes involved in this case, . . . there is no reason to transfer or not transfer based on this factor." *Nat'l Wildlife Fed'n*, 437 F. Supp. 2d at 49; *see also Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 335 (D.D.C. 2020) (observing that federal courts are "presumed to be equally familiar with the federal laws governing [the plaintiff's] claims") (alterations in original) (citation omitted).

With respect to the state law claims, that aspect too is neutral. Taking Plaintiffs' claims on their face, the alleged torts are brought under District of Columbia, Texas, or Louisiana law.[5] Thus, any federal court in which these matters are heard will have to apply the law of a non-forum state. Courts in this District are no more competent to undertake that task than any other.

#### 2.   *The Relative Congestion of the Transferee and Transferor Courts*

The court agrees with the parties that this factor is "neutral, or at best, only slightly moves the needle one way or another." K.N.N. Mot. at 19; K.N.N. Opp'n at 18–19; J.K.A. Mot. at 19; J.K.A. Opp'n at 20.

---

[5] The court offers no opinion as to whether District of Columbia law in fact would apply to any asserted tort claim.

### 3. The Local Interest in Deciding Local Controversies

The local interest in deciding local controversies is "the public interest factor of most importance in this case." *Bourdon*, 235 F. Supp. 3d at 308; *see also S. Utah Wilderness v. Norton*, 2002 WL 32617198, at *5 (D.D.C. June 28, 2002) (stating that this factor is "arguably most important of the public interest factors"). Wherever the local interest might rest, it is certainly not in the District of Columbia, as the primary tortious acts happened elsewhere.

Plaintiffs counter by emphasizing the "significant national interests involved." K.N.N. Opp'n at 18; J.K.A. Opp'n at 20. While there may be a "national aspect" to these matters, "the depth and extent of [the transferee districts'] interest is indisputable." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 71 (D.D.C. 2003) (citations omitted). Plaintiffs' reliance on *Cruz v. Department of Homeland Security* is inapposite. K.N.N. Opp'n. at 18 (citing No. 19-cv-2727 (DLF), 2019 WL 8139805 (D.D.C. Nov. 21, 2019); J.K.A. Opp'n at 20 (same). In that case, the plaintiff challenged "the legality of the [Migrant Protection Protocols] themselves, not details regarding their implementation." *Cruz*, 2019 WL 8139805, at *2. These cases, by contrast, do not involve a challenge to national policy but to torts directed at individual plaintiffs. Though the allegations may garner attention beyond where they occurred, that by itself does not favor locating venue in the District of Columbia.

The public-interest factors thus favor transfer.

*     *     *

On balance then, the private- and public-interests factors weigh heavily in favor of transferring these matters to the venues selected by Defendants.

### C.     Venue Discovery

To stave off transfer, Plaintiffs request the opportunity to conduct venue-related discovery. K.N.N. Opp'n at 20–24; J.K.A. Opp'n at 21–25. "Motions for venue discovery are subject to the same legal standards that apply to motions for jurisdictional discovery." *Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petroleum Expl. & Prod. Corp.*, 600 F. Supp. 3d 73, 78 (D.D.C. 2022). To obtain venue discovery, "a plaintiff must have at least a good faith belief that such discovery will enable it to show" that venue is proper in this District. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Moreover, "a plaintiff must make a detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 741 F. Supp. 2d 55, 60 (D.D.C. 2010) (internal quotation marks omitted).

Plaintiffs here do not seek pure venue discovery—after all, Defendants request transfer in the first instance, not dismissal based on improper venue.[6] So, what Plaintiffs really want is discovery to shore up their case against transfer. But such discovery would not help Plaintiffs "because even if [some of] the alleged decisions were made in the District of Columbia, the gravamen of the acts or omissions complained of . . . occurred [elsewhere]." *Sanchez ex rel. Rivera-Sanchez v. United States*, 600 F. Supp. 2d 19, 23 (D.D.C. 2009).

Plaintiffs believe that "[d]iscovery is likely to show D.C.-based officials performed critical roles in the tortious conduct at issue here." K.N.N. Opp'n at 21; J.K.A. Opp'n at 22. But Plaintiffs' FOIA requests show otherwise. At most, those records establish "coordination of Plaintiffs' deportation flight[s]" by D.C.-based officials, not direct involvement in their claimed

---

[6] True, Defendants alternatively seek dismissal for lack of venue, but the court does not reach that argument. *See* n.4 *supra*.

10

maltreatment. K.N.N. Opp'n at 22; *see also* J.K.A. Opp'n at 24 (stating that "multiple emails confirm that D.C.-based DHS and ICE officials coordinated and approved the October and November 2020 deportation flights and other similar Special High Risk Charters"); K.N.N. Sur-Reply at 2–3 (additional emails establishing flight coordination); J.K.A. Sur-Reply at 2 (same).

Plaintiffs also contend that "newly-produced emails show communication to and coordination with D.C.-based officials in response to hunger strikes in detention facilities." J.K.A. Sur-Reply at 2; K.N.N. Sur-Reply at 3. But the one email Plaintiffs attach is from a New Orleans-based ICE official "elevat[ing]" the fact of a hunger strike by a Cameroonian detainee. *See, e.g.*, K.N.N. Sur-reply, Ex. A, ECF No. 30-3, at 39. It establishes no more. And, even if additional communications would show actual coordination with D.C.-based officials about how to respond, again the "gravamen" of Plaintiffs' suits remains outside this District. *See Sanchez*, 600 F. Supp. 2d at 23.

Because "the court does not believe discovery as to venue will alter the court's balancing of the relevant factors," Plaintiffs' request for venue discovery is denied. *Muldrow*, 2021 WL 6844248, at *3.

### IV.     CONCLUSION AND ORDER

For the foregoing reasons, the court grants in part and denies in part K.N.N. Defendants' Motion to Transfer and Dismiss, ECF No. 16, and J.K.A. Defendants' Motion to Transfer or, in the alternative, Dismiss, ECF No. 31. Defendants' motions to transfer are granted but the motions to dismiss are denied without prejudice to their renewal in the transferee courts. The Clerk of Court shall transfer *K.N.N., et al., v. United States of America, et al.*, 23-cv-2748, to the Northern District of Texas. The Clerk of Court shall also transfer *J.K.A., et al., v. United States of America, et al.*, 23-cv-2273 to the Western District of Louisiana.

Finally, because the court has considered the materials contained in the proposed sur-replies, the court grants J.K.A. Plaintiffs' Motion for Leave to File Sur-Reply in Opposition to Defendants' Motion, ECF No. 45, and K.N.N. Plaintiffs' Motion for Leave to File Sur-Reply in Opposition Defendants' Motion, ECF No. 30.

Dated: June 23, 2025

Amit P. Mehta
United States District Court Judge